# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **YOLANDA NELSON** | **CIVIL ACTION** |
| **VERSUS** | **NO: 07-3828-HGB-SS** |
| **MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION** | |

## REPORT AND RECOMMENDATION

The plaintiff, Yolanda Nelson ("Nelson"), seeks judicial review, pursuant to Section 405(g) of the Social Security Act (the "Act"), of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423, and her claim for supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1382(a)(3).

## PROCEDURAL HISTORY

On December 1, 1999, Nelson submitted an application for benefits reporting that her disability began on October 20, 1999. R. 249-51. On March 17, 2000, her application for benefits was denied. R. 253-57.

On October 28, 2003, Nelson filed another application for disability benefits, r. 84-86, reporting that she became disabled on May 30, 2003. R. 84. She reported that a heart condition prevented her from doing heavy lifting. She experienced shortness of breath, dizziness, body aches and problems breathing. R. 115. On January 16, 2004, her application was denied. R. 36-38. On March 30, 2005, a hearing was held before an Administrative Law Judge ("ALJ"). R. 304-17.

Nelson was represented by counsel at the hearing. R. 304. On August 23, 2005, the ALJ issued an unfavorable decision. R. 22-32. On February 27, 2006, the Appeals Council remanded the case. R. 52-55. It found that the August 23, 2005 decision did not contain an adequate evaluation of the examining source opinions and a function-by-function assessment of Nelson's ability to do work-related activities. R. 53-54. On June 16, 2006, Rebecca Dean withdrew as counsel for Nelson. R. 82. On July 25, 2006, a hearing before an ALJ was conducted. Nelson was not represented by counsel at the hearing. R. 259. On September 18, 2006, the ALJ issued an unfavorable decision. R. 9-19. On May 18, 2007, the Appeals Council denied her request for review. R. 5-7

On July 25, 2007, Nelson filed a *pro se* complaint with this Court. Rec. doc. 1. On June 16, 2008, Rebecca Dean enrolled as counsel for Nelson. Rec. doc. 14. The parties submitted cross-motions for summary judgment. Rec. docs. 23 and 26. Nelson reports that she filed a third application for benefits on July 18, 2007, and, on September 30, 2007, the ALJ issued a fully favorable decision. Rec. doc 23 at 10.

## STATEMENT OF ISSUES ON APPEAL

1. Did the ALJ err by failing to follow the remand instructions of the Appeals Council?

2. Did the ALJ err by failing to perform a proper evaluation of Nelson's credibility?

3. Did the ALJ err by failing to assess additional limitations that would be imposed by Nelson's breast cancer and related treatment?

## THE COMMISSIONER'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following findings relevant to the issues on appeal:

1. Nelson met the insured status requirements of the Act through March 31, 2004.

2. Nelson had not engaged in substantial gainful activity since May 30, 2003, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. Nelson had the following severe impairments: rheumatic heart disease; valvular heart disease; back pain and scoliosis; and tumor in right breast, confirmed as cancerous by biopsy on May 26, 2006 (20 CFR 404.1520© and 416.920©).

4. Nelson did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. Nelson had the residual functional capacity to stand and walk two hours of an eight-hour workday; unrestricted sitting; lift and carry less than 10 pounds frequently; lift and carry 10 pounds occasionally; never climb ropes, ladders, or scaffolds; only occasionally stoop, kneel, crouch, crawl, or climb stairs and ramps; no exposure to fumes, noxious odors, gases, chemicals, poor ventilation, or extreme heat, cold, or humidity; and avoid working around dangerous moving machinery or at unprotected heights.

6. Nelson was unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. Nelson was 40 at the time of the alleged disability onset date, which is defined as a younger individual age 18-44 (20 CFR 404.1563 and 416.963).

8. Nelson had at least a high school education and was able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills was not an issue in this case because Nelson's past relevant work was unskilled (20 CFR 414.1568 and 416.968).

10. Considering Nelson's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that she could perform (20 CFR 404.1560©, 404.1566, 416.960©, and 416.966).

11. Nelson was not under a "disability," as defined in the Act from May 30, 2003, through the date of the decision, September 18, 2006 (20 CFR 404.1520(g) and 416.920(g)).

R. 14-19.

## ANALYSIS

a. **Standard of Review.**

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence.

Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005); Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971); Perez, 415 F.3d at 461. Alternatively, substantial evidence may be described as that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000). This court may not re-weigh the evidence, try the issues *de novo* or substitute its judgment for the Commissioner's. Perez, 415 F.3d at 461; Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

The administrative law judge is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91, 113, 112 S.Ct. 1046, 1060 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. Villa, 895 F.2d at 1022; Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995).

To be considered disabled and eligible for disability insurance benefits, plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599

4

& appendices, §§ 416.901 to 416.998 (1997). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. Id. §§ 404.1520, 416.920; Perez v. Barnhart, 415 F.3d at 461; Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 514 U.S. 1120, 115 S. Ct. 1984 (1995).[1] The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

The claimant has the burden of proof under the first four parts of the inquiry. Id. If she successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy, which the claimant is capable of performing. Greenspan, 38 F.3d at 236; Kraemer v. Sullivan, 885 F.2d 206, 208 (5th Cir. 1989). When the Commissioner shows that the claimant is capable of engaging in alternative employment, "the ultimate burden of persuasion shifts back to the claimant." Id.; accord Selders, 914 F.2d at 618.

"In determining whether substantial evidence of disability exists, this court weighs four

---

[1] The five-step analysis requires consideration of the following:
First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).
Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. Id. §§ 404.1520©, 416.920©.
Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. Id. §§ 404.1520(d), 416.920(d).
Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. Id. §§ 404.1520(e), 416.920(e).
Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. Id. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (1994) ("Medical-Vocational Guidelines").

5

factors: (1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective medical evidence of pain and disability; and (4) the claimant's age, education, and work history." Perez v. Barnhart, 415 F.3d at 462.  "The Commissioner, rather than the courts, must resolve conflicts in the evidence."  Martinez v. Chater, 64 F.3d 172, 174 (5th Cir. 1995).

**b.     Testimony at the March 30, 2005 hearing.**

Nelson's attorney reported that, in response to a prior application for benefits, she was awarded a closed period of disability benefits from October 1, 2001 to February 2003.  At the suggestion of the ALJ in that proceeding, she worked for a month in a sedentary job.  R. 306.

Nelson was 42 at the time of the hearing.  R. 307.  She had completed the twelfth grade.  R. 307.  She had worked as a sitter, housekeeper, stock clerk, child care provider, camp counselor and attendant at a Shoney's breakfast bar.  R. 307.  She testified that she could not work because of her heart condition, arthritis, fibroid tumors and depression.  R. 307-08.  She experienced dizziness, blurry vision, inflammation in her chest, palpitations and problems with her right shoulder, right arm and left foot.  R. 309-10 and 314.

In 1971, Nelson was diagnosed with rheumatic fever and a heart murmur ®. 308); in 1996 with mitrovalve collapse after an echocardiogram ®. 308); in 1998 with gastric reflux disorder in her stomach and fibroid tumors in right breast ®. 308); in 2001 with problems in her right shoulder and back at L4-5 ®. 309); and in 2003 with hypertension and chest pains ®. 309).  For sixteen years she received monthly injections to prevent infection from going to her heart.  R. 308.  In 1999, she had surgery to remove tumors from her right breast ®. 308); in 2000 for a drain in her right breast ®. 308); in 2001 for her right shoulder ®. 308); and in 2002 for her left foot ®. 309).  In 2000 she was hospitalized for gastric reflux disorder.  R. 308.

Nelson lived alone. R. 310. She did not do housework. R. 311. Her sister came and did the chores. R. 312. She relaxed during the day. R. 310. She spent most of the day lying down. R. 315. She could not walk more than half a block. R. 313. She had trouble standing. R. 314. She could not sit for long periods of time. R. 315.

At the conclusion of the hearing, the ALJ reported that she would receive an appointment to see a doctor. R. 316.

### c. **Testimony at the July 25, 2006 hearing.**

At the time of the hearing Nelson was 43. R. 269. She was five feet four inches tall and weighed 157 pounds. R. 269. She was single and had four adult children. R. 269. She had a twelfth grade education. R. 270. She could read, write and do basic mathematics. R. 270. She had a driver's license, r. 269, but only used a car to go to the doctor. R. 270.

Nelson was awarded a closed period of disability (October 2001 through February 2003) because of the surgery on her right shoulder and left foot. R. 274. After the closed period of disability she worked about two months as a sitter for the elderly when she experienced hypertension and heart problems. R. 271 and 275. She could not work because of her heart condition. R. 273. She became fatigued and light headed. R. 273.

In December 2003, she had heart surgery. R. 276. After Hurricane Katrina, she was diagnosed with migraine headaches and breast cancer. R. 277-79. She lived in Houston with her mother, but received chemotherapy in New Orleans. R. 280. She began her chemotherapy the month before the hearing and was scheduled for four months of this treatment. R. 281. As a result of the chemotherapy she had side effects including aching bones, loss of appetite and hair, fatigue and diarrhea. R. 282-83.

7

Nelson could not walk more than half a block, stand for more than five minutes before she had to sit down, sit for more than 45 minutes before she became numb, bend at the waist, squat, bend at the knees or pick up more than two pounds. R. 283-84. She was anxious and depressed about her cancer. R. 283-84 and 289. She was not on any psychotropic medications. R. 285. Her mother and family members took care of her. R. 285-86. She did not sleep well at night. R. 286. She took naps during the day. R. 286. Her mother helped her with her personal hygiene. R. 286-87. She did not do any housework. R. 287. She drank Ensure and a lot fluids. She ate very little else. R. 287. She did not go out to church or anywhere else. R. 288.

Nelson's mother testified that she knew how much her daughter had struggled but she was getting much better. R. 289.

Jal Hoang M.D., a specialist in internal medicine, testified that he reviewed the medical evidence in the case. R. 290. Nelson had rheumatic heart disease with severe mitro regurgitation; she had an echocardiogram in June 2003, which revealed that the ejection fractions were still good at 55 to 60 percent; and she had a catheterization on October 15, 2003 which showed ejection fractions at 60 percent; and she had valvular heart disease secondary to the rheumatic heart disease. R. 290-91. She had mitro valve replacement surgery in December 2003. R. 291. As of April 2006, she did not have valvular heart disease. R. 291. She did not meet the listing for heart failure. R. 292. On May 12, 2005, she was diagnosed with scoliosis. There was no evidence of severe nerve root compression with motor dysfunction. R. 292. A May 17, 2005 mammogram revealed a tumor in the right breast which was cancerous. R. 292. She received chemotherapy to shrink the tumor before surgery. R. 292. She did not meet the listing requirements for cancer. R. 292-93.

Dr. Hoang testified that Nelson's impairments limited her to sedentary work. R. 293. She

8

would have been limited to sedentary activity in May, 2003, the alleged onset date. R. 293-94. She required coumadin, a blood thinner, for the rest of her life to prevent clotting because of the prosthetic valve. R. 294-95. The coumadin treatment prevented her from engaging in any hazardous activity which posed a risk of cutting herself. R. 295.

The vocational expert testified that, based on the ALJ's hypothetical questions, Nelson could perform the full range of sedentary unskilled jobs. R. 299. If her testimony concerning her limitations was fully credited, she would not be able to work in any capacity. R. 300.

**d.     Medical evidence.**

On August 4, 2000, Nelson was seen at the Medical Center of Louisiana in New Orleans ("Charity"). The diagnoses included heart murmur, scoliosis and hypertension. Medication was prescribed. R. 167.

On January 16, 2003, Nelson was seen at Charity. The physical exam did not reveal any acute disorder. Her medication was refilled. R. 166.

On May 30 and 31, 2003, Nelson was seen at Charity's emergency room for complaints of chest pain. R. 158-160. A CT scan of the chest produced a normal examination with deep pulmonary inflation. R. 162.

On June 16, 2003, there was a transthoracic echocardiogram which revealed normal systolic functions and ejection fractions of 55% to 60%. The test was done because Nelson had a history of hypertension and complained of shortness of breath with a murmur detected. R. 154. She returned to Charity in July and August of 2003. R. 152-53. On August 26, 2003, she was seen at Charity for complaints of increasing shortness of breath. R. 149. An echocardiogram revealed severe mitral regurgitation secondary to abnormal mitral valve function. R. 150. On September

9, 2003, she was seen at Charity. R. 146.

On October 7, 2003, Nelson was seen at Charity. The diagnosis was mitral valve disorder. R. 141 and 145. On October 15, 2003, she was seen at Charity for left heart cardiac catheterization because of a diagnosis of mitral valve disorder. R. 138-140. There was a normal systolic function. There was trivial mitral regurgitation and no aortic stenosis. R 142.

On December 15, 2003, Nelson was admitted to Charity for a mitral valve replacement. She was discharged on December 20, 2003. R. 177-185. At her discharge she was instructed to walk five minutes every day, increase by one minute per day until she reached forty minutes per day. R. 178.

On December 19, 2003, a medical doctor completed a physical residual functional capacity assessment. The diagnosis was hypertension and mitral regurgitation-trivial. R. 169. There were some exertional limitations. No other limitations were established. R. 169-178.

Throughout 2004, Nelson was seen at Charity for management of her anticoagulation medicine. R. 188-90, 193, 196-97, 208, 211, 214, 217-20 and 227-29. On January 21, 2004, she was described as healing well. R. 192. On January 27, 2004, she returned to Charity. R. 221. On March 22, 2004, it was noted that her symptoms were improving but she had limited functional capacity. R. 191 and 212. On May 12, 2004, she reported chest discomfort and soreness. The incision was well healed. R. 206. Nelson returned to Charity in June and August of 2004. R. 198 and 204.

On February 15, 2005, Nelson was seen at Charity. Her hypertension was described as well controlled. R. 216 and 226.

On May 12, 2005, Nelson was seen by Emmett Chapital, M.D., a cardiologist, for a

consulting examination. R. 230-31. On May 3, 2005, there was an echocardiogram. R. 232-33. Dr. Chapital completed an assessment of her ability to do work-related activities. R. 234-36.

On May 17, 2006, a palpable abnormality in the right breast was found on a mammogram which was highly suggestive of malignancy. R. 248. On May 25, 2006, there was a biopsy which revealed cancer of the right breast. R. 237-38.

e.  **Plaintiff's Appeal.**

Issue no. 1.    Did the ALJ err by failing to follow the remand instructions of the Appeals Council?

Nelson contends that the ALJ failed to follow the remand instructions by not giving further consideration to her residual functional capacity. She notes: (a) absence of a function-by-function assessment of her ability to perform work-related activities; (b) similarity in the evaluations of the examining source opinions of the decisions of August 23, 2005 and September 18, 2006; and © failure to explain the weight given to the opinion. The Commissioner contends that the ALJ properly followed the remand instructions of the Appeals Council.

In the first decision, the ALJ determined that Nelson was capable of performing her past relevant work as a salad bar attendant which was predicated on a finding that she was capable of a full range of light work. R 31. The Appeals Council noted that Dr. Chapital's medical source statement was consistent with a residual functional capacity for sedentary work. Although the first decision noted the presence of Dr. Chapital's opinions, the ALJ did not reject Dr. Chapital's opinions. R. 53. The Appeals Council concluded that the first decision did not contain an adequate explanation of Dr. Chapital's opinions. R. 53. With reference to the RFC light work determination, the Appeals Council said:

> [T]he decision does not contain a function-by-function assessment of the claimant's ability to do work-related physical and mental activities and sufficient rationale with

specific references to evidence of record in support of the assessed limitations.

R. 53-54. Following a description of issues raised by the prior decision, the Appeals Council required that on remand the Administrative Law Judge will: (a) give further consideration to Nelson's maximum RFC; (b) if warranted, obtain supplemental evidence from a vocational expert; and © verify the date she was last insured. R. 54.

On remand, the ALJ determined that Nelson could <u>not</u> perform her past relevant work. Instead, the ALJ determined that she could perform sedentary work with limitations. R. 18. The Appeals Council did not order the ALJ to provide an explicit function-by-function analysis in the assessment of Nelson's RFC. The remand order demonstrates that the issue of the function-by-function assessment arose within the context of the determination that Nelson could perform a full range of light work which was inconsistent with Dr. Chapital's opinions. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." Social Security Ruling 96-8p, 1996 WL 374184, *3 (S.S.A.). This Ruling does not require the ALJ to include a function-by-function assessment in the narrative discussion. Instead the Ruling provides that:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

<u>Id</u>. at *7 (footnote omitted). The ALJ's decision includes a discussion of the medical and other evidence. R. 15-16. The RFC assessment by the ALJ (R. 17) is consistent with the requirements

12

of SSR 96-8p. Neither the order of remand nor the Ruling required the inclusion of a function-by-function assessment of Nelson's ability to do work-related activities. The ALJ complied with the requirement in the remand order that further consideration be given to Nelson's maximum residual functional capacity.

Nelson notes the similarity in the two decisions of the descriptions of the results of Dr. Chapital's examination. See R. 27-28 (August 23, 2005 decision); and R. 15-16 (September 18, 2006 decision). The ALJ concluded that Dr. Chapital's suggested limitations were generally appropriate with the exception that Nelson was not precluded from all activity involving pushing, pulling, climbing, stooping, kneeling, balancing, crouching, and crawling. R. 17. Nelson urges that: (1) this demonstrates a portion of Dr. Chapital's opinion was given no weight; (2) the ALJ was required to make an evaluation of the opinion with an explanation for the lack of weight assigned to it; and (3) instead, the ALJ made a conclusory statement. The ALJ "must weigh medical source statements (about what an individual can still do) under the rules set out in 20 CFR 404.1527 and 416.927, providing appropriate explanations for accepting or rejecting such opinions." Social Security Ruling 96-5p, 1996 WL 374183, *5 (S.S.A.). At the hearing a medical expert, Dr. Hoang, testified as to Nelson's limitations. R. 293. Consistency with the record as a whole is one of the factors to be considered by the ALJ in deciding the weight to be given to any medical opinion. 20 CFR 404.927(d)(4). The ALJ found that some of Dr. Chapital's limitations were not appropriate because they were not consistent with the record as whole, including Dr. Hoang's testimony. R. 16-17. The ALJ provided an appropriate explanation for rejecting some of Dr. Chapital's opinions.

The ALJ secured testimony from a vocational expert and determined that Nelson met the insured status requirements through March 31, 2004. R. 14 and 296-302. The ALJ fully complied

with the order of remand.

<u>Issue no. 2.</u>   Did the ALJ err by failing to perform a proper evaluation of Nelson's credibility?

The ALJ determined that, to the extent Nelson alleged an inability to do any significant work activities on a sustained basis, "her allegations and subjective complaints are found not to be fully credible when considered in light of the entirety of the evidence of record." R. 17. The ALJ reported that this finding would be discussed "more fully" in the remainder of the decision. R. 17. In the next paragraph the ALJ finds that Nelson's "complaints of disabling pain are out-of-proportion to the objective medical evidence." R. 17. There is no further discussion of her credibility. The Commissioner concedes that the "ALJ's credibility assessment was not as articulate as it could have been. . . ." Rec doc. 26 at 9. The Commissioner urges that: (a) the ALJ made the appropriate credibility finding; and (b) Nelson did not demonstrate prejudice. <u>Id</u>. at 10.

Nelson cites <u>Abshire v. Bowen</u>, 848 F.2d 638 (5th Cir. 1988), in which the Fifth Circuit stated that:

> [A]n ALJ's unfavorable credibility evaluation of a claimant's complaints of pain will not be upheld on judicial review where the uncontroverted medical evidence shows a basis for the claimant's complaints unless the ALJ weighs the objective medical evidence and assigns articulated reasons for discrediting the claimant's subjective complaints of pain.

<u>Id</u>. at 642. At the July 25, 2006, hearing Nelson testified that she could not walk more than half a block and could not stand for more than five minutes. R. 283. On December 20, 2003, Nelson was discharged from Charity after five days in the hospital for mitral valve replacement.[2] At that time, she was given the following instructions:

> No driving for four weeks. No tub baths for four weeks. . . . No lifting greater than

---

[2] Nelson alleged that she became disabled about seven months earlier on May 30, 2003. R. 84.

14

      10 pounds for one month, greater than 20 pounds for two months. Instructed to walk
      five minutes every day, increase by 1 minute per day until 40 minutes per day.

R. 178. On January 21, 2004, she returned to Charity. She was found to be healing well. There is no record of any change in the instructions on walking. She was to return to cardiology in April 2004. R. 192. On March 22, 2004, it was noted that her symptoms were improving but with limited functional capacity, including ability to walk. R. 191. On May 12, 2004, her symptoms were described as improved. R. 206. On February 15, 2005, it was noted that her blood pressure was well controlled. There was no report of an inability to walk. R. 216. On May 12, 2005, Nelson complained to Dr. Chapital of a shortness of breath after walking less than a block. R. 231. Dr. Chapital determined that while her standing/walking was affected by her impairment, she could stand or walk two hours in an eight hour day and stand/walk for one hour without interruption. R. 234. The uncontroverted medical evidence is not consistent with Nelson's testimony of her limitations on walking and standing. There is substantial evidence to support the ALJ's finding that Nelson's "allegations and subjective complaints are found not to be fully credible when considered in the light of the entirety of the evidence of record." R. 17. The evidence in the record also demonstrates that Nelson was not prejudiced by the ALJ's failure to discuss all of the credibility factors. See Shave v. Apfel, 238 F.3d 592, 597 (5th Cir. 2001) ("[t]his Court requires . . . a showing that the claimant was prejudiced by the agency's failure to follow a particular rule before such a failure will be permitted to serve as the basis for relief from an ALJ's decision.").

Issue no. 3.    Did the ALJ err by failing to assess additional limitations that would be imposed by Nelson's high grade breast cancer and related treatment?

      The medical evidence demonstrates that the first report of a potential cancer was found in a May 17, 2006 mammogram. R. 248. Nelson met the insured status requirements only through

15

March 31, 2004. The May 17, 2006 report of cancer does not relate to her claim for disability insurance benefits under Title II. It is only relevant to her claim for SSI.

Nelson does not urge that as of the September 18, 2006 decision, she met the listing requirements for cancer. At the July 25, 2006 hearing, Nelson testified that she began four months of chemotherapy in June 2006. R. 281. Dr. Hoang reported that the treatment was to shrink the tumor before surgery. R. 292. The ALJ determined that the breast cancer did not meet the listing requirements. R. 17. Nelson argues that the ALJ should have deferred adjudication until the effectiveness of the therapy could be determined. The regulations provide that "[i]n some cases, we <u>may</u> need to defer adjudication until the effectiveness of therapy can be assessed." 20 C.F.R. pt. 404, subpt. P, app. 1, § 13.00E(3) (emphasis added). The Commissioner responds that the ALJ's finding that the cancer did not meet the listing requirement included determination that it was not necessary to hold the record open. The testimony from Dr. Hoang provides substantial evidence to support these determinations. The Commissioner also notes that Nelson could have, but did not submit additional medical records on the chemotherapy to the Appeals Council or this Court. The ALJ did not err in failing to assess additional limitations as a result of Nelson's cancer.

## RECOMMENDATION

Accordingly, IT IS RECOMMENDED that the Commissioner's motion for summary judgment (Rec. doc. 26) be GRANTED and Nelson's motion for summary judgment (Rec. doc. 23) be DENIED and her complaint be dismissed with prejudice.

## OBJECTIONS

A party's failure to file written objections to the proposed findings, conclusions and

recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 31st day of March, 2009.

                                      **SALLY SHUSHAN**
                                  **United States Magistrate Judge**